UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF ALABAMA

In re

KRYSTLE NICOLE SANDERS,

    Debtor.

Case No. 11-32826-DHW
Chapter 13

---

KRYSTLE NICOLE SANDERS,

    Plaintiff,

v.

COMMUNITY CARS, INC.,

    Defendant.

Adv. Proc. 12-03066-DHW

\*\*\*\*\*\*\*\*

COMMUNITY CARS, INC.,

    Counterclaim Plaintiff,

v.

KRYSTLE NICOLE SANDERS,

    Counterclaim Defendant.

## MEMORANDUM OPINION

In this complaint, Krystle Nicole Sanders, (hereinafter "Sanders") seeks damages against Community Cars, Inc. (hereinafter "Community Cars") for its alleged willful violation of the automatic stay. Community Cars asserts a counterclaim against Sanders for breach of contract, unjust

enrichment, and wrongful possession.[1] At trial, Sanders was represented by counsel, Nicholas H. Wooten, and Community Cars was represented by its attorneys, H.C. Ireland, III and Robert W. Heath. For the following reasons, the court finds that Community Cars willfully violated the automatic stay for which Sanders' damages are $6,136 plus reasonable attorney's fees. Further, the court finds that Community Cars is not entitled to damages for Sanders' breach of contract.

Jurisdiction

The court's jurisdiction in this adversary proceeding is derived from 28 U.S.C. § 1334 and from an order of The United States District Court for this district wherein that court's jurisdiction in title 11 matters was referred to the bankruptcy court. See General Order of Reference [of] Bankruptcy Matters (M.D. Ala. April 25, 1985). Further, because this adversary proceeding involves an alleged violation of the automatic stay, this is a core proceeding under 28 U.S.C. § 157(b)(2), thereby extending this court's jurisdiction to the entry of a final order of judgment.

Factual Findings

Sanders purchased a vehicle on credit from the defendant on an unspecified date and subsequently filed a chapter 13 for relief in this court on October 27, 2011. In the matrix of creditors that accompanied her petition, Sanders listed Community Cars with a Post Office Box 680280 Prattville, Alabama 36068 mailing address. On October 30, 2011, notice of Sanders' bankruptcy was mailed to Community Cars by the Bankruptcy Court from the National Bankruptcy Noticing Center using the address furnished by Sanders.

Community Cars shares Post Office Box 680280 with Larry Puckett Chevrolet, Inc. Both of these businesses are primarily owned by Larry Puckett. Duke Caro, the manager of Community Cars, does not have a key to the post office box. Typically, either Holly Taylor Foster[2] (hereinafter "Foster") or another employee of Larry Puckett Chevrolet goes to the Post

---

[1] Prior to trial, the court granted Community Cars' motion for partial summary judgment on the breach of contract count of its counterclaim. However, liquidation of the damages, if any, for that breach was left at issue for trial.

[2] Foster is a comptroller for both Community Cars and Larry Puckett Chevrolet, however her office is at Larry Puckett Chevrolet and most employees of Community Cars are unaware that she is also employed by Community Cars.

Office and picks up the mail from the post office box. After the mail is retrieved, it is taken to Larry Puckett Chevrolet where it is sorted between the two companies. Community Cars' mail is then placed in a separate tray where an employee of Community Cars stops in to pick it up. However, the mail is not placed in an envelope or fastened together in any manner; and the walkway in which the tray is located is open to an unspecified number of other employees.

Community Cars follows a four step procedure upon receiving a notice of bankruptcy. First, a note is placed in the computer stating that the debtor for that account is not to be called for collection purposes; second, a proof of claim form is completed and submitted to the Bankruptcy Court; third, the bankruptcy notice is placed in the file for the account to which it pertains; and fourth, the file is placed in a separate filing cabinet which holds all of the accounts which are currently in bankruptcy. At the time Sanders' car was repossessed, none of these steps had been taken for her account with Community Cars.

On February 7, 2012, Community Cars repossessed Sanders' vehicle. When Sanders discovered her car was missing early that morning, she panicked, thinking that it had been stolen. Her mother suggested that it may have been repossessed, so she called her bankruptcy attorney's office. An employee in the attorney's office then contacted Community Cars, who confirmed the vehicle had been repossessed. When a representative of Community Cars was informed that Sanders had filed for bankruptcy, steps were taken to have the vehicle returned and it was returned to Sanders later that same day.

After Sanders had called her bankruptcy attorney, she continued to suffer severe stress over the loss of her vehicle. She experienced chest pains, shortness of breath, headache, and a nose bleed. Her mother and brother were concerned and took her to the Emergency Room ("ER") at Baptist Hospital in Prattville, Alabama. At the ER, she was seen by Dr. Eiland, who treated her symptoms and recommended that she follow up with a primary care provider as her chest x-ray and CT scan showed that she may have either sarcoidosis or lymphoma. Sanders was released from the ER later in the afternoon, but followed up with her doctor and suffered similar symptoms for several months. She was eventually diagnosed with sarcoidosis.

Sarcoidosis is an auto-immune condition which is often asymptomatic and may go undiagnosed even after symptoms have presented. Sarcoidosis itself is not caused by stress, however the symptoms may increase or present during situations involving severe stress. Sanders had previously been seen at the ER for symptoms similar to those she experienced on February 7, 2012 and her sarcoidosis had developed prior to that day. However, the stress caused by the repossession of her car brought on this particularly severe episode of sarcoidosis which lead to her diagnosis.

Due to this episode, she was unable to work for an extended period of time and eventually lost her job. She is working again, but her abilities are still limited due to continued pain caused by the sarcoidosis. Sanders is receiving ongoing treatment for her condition. Sanders' medical bills from the ER on February 7, 2012 were $3,564 and she suffered a loss of wages of $72 for her missed work that day; she also suffered severe mental anguish which lead to symptoms of sarcoidosis resulting from the repossession of her car.

The notice of the order confirming Sanders' chapter 13 plan was mailed on February 2, 2012. Community Cars receive the notification on February 7, 2012. While Community Cars had originally submitted affidavits stating that the repossession was on a date prior to receiving the notice, it has since admitted that the receipt of the confirmation notice and the repossession occurred on the same day.

Sanders eventually surrendered the vehicle to Community Cars and it was not working at the time of the surrender. Community Cars sold the vehicle and now claims a deficiency of $5,684 plus fees and costs. Community Cars never notified Sanders that the car was to be sold nor provided her with notification of the disposition of the vehicle nor a calculation of the deficiency once the vehicle had been sold.

Legal Conclusions

I. Presumption of Notice

The filing of a bankruptcy petition operates as a stay of "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case." 11 U.S.C. § 362(a)(6). Actions taken

subsequent to a debtor's filing are in violation of the automatic stay irrespective of notice. S*ee Borg–Warner Acceptance Corp. v. Hall,* 685 F.2d 1306 (11th Cir.1982). Further, intentional acts taken against a debtor or property of her bankruptcy estate after a case has been filed and with knowledge of same may be punishable as contempt of court, subjecting the actor to "actual damages, including costs and attorneys' fees" for a willful violation of the automatic stay. *See generally Carver v. Carver,* 954 F.2d 1573 (11th Cir. 1992), *cert denied,* 506 U.S. 986 (1992); *see also Jove Eng'g, Inc. v. Internal Revenue Service,* 92 F.3d 1539, 1555 (11th Cir. 1996). In order for a defendant to willfully violate the automatic stay, specific intent to violate the stay is not required, rather the standard is met if the defendant has knowledge of the stay and intends the actions which constitute the violation. *Goichman v. Bloom (In re Bloom)*, 875 F.2d 224, 227 (9th Cir. 1989).

A properly addressed and stamped letter mailed to a party establishes a rebuttable presumption that the letter was received by the party to whom it was addressed. *In re Robinson*, 228 B.R. 75, 81 (Bankr. E.D.N.Y. 1998). A party may rely on the court's certificate of mailing in order to create this presumption. *Id.* Courts have used various standards to determined what is required to rebut the presumption. *See CUNA Mutual Insurance Group v. Williams (In re Williams)*, 185 B.R. 598, 600 (B.A.P. 9th Cir. 1995). Some have held that denial of receipt along with evidence of a standardized business practice upon receipt of a notice that has not been accomplished is enough to overcome the presumption that the notice was received. *See id*. Other courts have found that such evidence of a routine practice is simply another way of merely denying that the notice was received. *See id*.

Here, the parties do not dispute that Community Cars repossessed Sanders' vehicle after she had filed her bankruptcy petition and thus violated the automatic stay. However, Community Cars claims that it did not have knowledge that Sanders had filed bankruptcy until they were called after her car was repossessed. The notice sent to Community Cars was sent to the proper address for the company. Community Cars presented evidence of procedures it follows upon receipt of a notice of bankruptcy and claims that since none of the four steps were accomplished for Sanders' account, then it has overcome the presumption that it received the notice. However, even under the more lenient standard allowing evidence of an established procedure to rebut the presumption, Community

Cars fails to overcome the presumption due to its flawed mail procedures. Community Cars shares its post office box with another company, its mail is first taken to that company where it is left in a hallway which is accessed by any number of employees until it is picked up and transported back to its place of business. Only once the mail has arrived at Community Cars do the procedures for safeguarding bankruptcy notices begin. No procedure is followed to track the mail from the time when it is retrieved from the post office box until it arrives at Community Cars. Because Community Cars did not overcome the presumption of receipt of notice, the repossession of Sanders' car constitutes a willful violation of the automatic stay.

II. Damages

A. Counterclaim Damages

Alabama law provides that prior to the sale of a debtor's vehicle after default, the creditor must provide the debtor with notice of the disposition of the vehicle. Ala. Code § 7-9A-611 (1975). If there is a deficiency after the sale of the vehicle, the creditor is also required to give the debtor a written explanation of the calculation of the deficiency. Ala. Code § 7-9A-616. If the creditor fails to give the debtor the notice or the calculation, then in a consumer goods transaction, the creditor is liable for any damages that result due to non-compliance with the requirement, and statutory damages. Ala. Code § 7-9A-625 (1975). The official comment outlines three approaches that courts have used when determining a creditor's consequences when it attempts to collect a deficiency after non-compliance with the article. Some courts have applied an absolute bar to the creditor's collection of a deficiency; some courts have held that the debtor can offset against a claim for deficiency all the damages that are recoverable under the section; and a plurality of courts have held that the creditor is barred from recovering the deficiency unless it can overcome a rebuttable presumption that compliance would have resulted in an amount sufficient to satisfy the debt. *See Folks v. Tuscaloosa Credit Union*, 989 So.2d 531, 536 (Ala. Civ. App. 2007).

The Alabama legislature revised this section of the code and such revisions became effective in 2002. *Id.* at 535. Prior to the revisions, Alabama courts applied the offset approach in both consumer and non-consumer transactions. *Id.* However, in the revisions, the legislature applied the rebuttable presumption to non-consumer transactions. *Id.* The

Alabama Court of Civil Appeals determined that this did not mean that it was required to apply the rebuttable presumption approach in consumer transactions, but that because the legislature did not modify the approach for consumer transactions, "it implicitly accepted the use of the setoff approach." *Id.* at 537. The court also declined to require that the rebuttable presumption approach had to be used in consumer transactions, because the legislature provided that the adoption of the rebuttable presumption approach in non-consumer transactions was intended to "leave to the court the determination of the proper rules in consumer transactions." *Id.* (internal quotation marks omitted).

In this case, the court granted partial summary judgment to Community Cars stating that it is owed for the deficiency on the loan after the sale of Sanders' car; the court left the determination of the amount of damages for the trial. (Doc. #25.) However, the evidence presented at the trial established that Community Cars did not comply with the provisions of Alabama law that require notification of the disposition and a calculation of the deficiency. In fact, the only evidence presented concerning the deficiency was testimony that it was in the amount of $5,684 plus attorney's fees and that this amount took into account the amount that Community Cars received for the sale of the vehicle. No documentation was presented as to the value of the vehicle, the amount the vehicle was sold for, or the amount that the plaintiff owed on the loan prior to the sale of the vehicle. Nor did Sanders present any evidence to establish damages due to the non-compliance of Community Cars. In this situation, the court does not have enough evidence to apply either the rebuttable presumption or the offset approaches, and therefore will apply the absolute bar approach. Due to Community Cars' failure to comply with the requirements set forth in the Alabama Code pertaining to the sale of a vehicle after default, Community Cars is barred from recovering any deficiency that remained after the sale of the vehicle.

  B. Plaintiff's Damages

Section 362 (k)(1) of the Bankruptcy Code allows an individual who has been injured by a willful violation of the automatic stay imposed by § 362 (a)(3) to "recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362 (k)(1) As previously stated, a willful violation does not necessarily mean the defendant intended to violate the stay, simply that the

defendant had knowledge of the bankruptcy and intended the action which violated the stay. *Goichman v. Bloom (In re Bloom)*, 875 F.2d 224, 227 (9th Cir. 1989). Section 362 (k)(1) does not define the "appropriate circumstances" under which punitive damages are recoverable, however, it is "well-settled" that more than a willful violation of the stay is required in order to impose punitive damages. *Credit Nation Lending Services, L.L.C. v. Nettles*, 489 B.R. 239, 249 (N.D. Ala. 2013). "Appropriate circumstances" has been found to require "egregious, vindictive" or "malicious" conduct or "conduct accompanied by bad faith." *Id.* (internal quotation marks and citation omitted). In the Eleventh Circuit, bankruptcy courts have not awarded punitive damages without finding weighty circumstances. *In re McBride*, 473 B.R. 813, 822 (S.D. Ala. 2012). Generally, punitive damages are not appropriate for a one-time incident, but rather for ongoing, vindictive or malicious conduct that causes "considerable and foreseeable" harm to the plaintiff. *See id.*

Sanders has argued Community Cars' conduct was such that punitive damages are appropriate in this case. However, the bulk of Sanders' evidence demonstrating any type of malice or vindictiveness is the affidavits which misstate the date on which her car was repossessed. The date as stated on the affidavits is prior to the date on which Community Cars received notice of the confirmation of Sanders' plan. Sanders presented evidence that the date of the repossession was on the same date on which such notice was actually received. Community Cars acknowledged that the dates stated on the affidavits were incorrect and claimed that it was confusion which led to the misstatement. The court finds that Community Cars did not intentionally misstate this date, but that it was due to misinformation or confusion on the part of the affiants. Additionally, Sanders' car was returned the same day on which it was repossessed, as soon as Community Cars had verified that she had filed for bankruptcy. Therefore, the court has determined that although Community Cards did willfully violate the automatic stay, there is nothing in its conduct which shows the type of malice or weighty circumstances which would make punitive damages appropriate.

In this case, Sanders has requested compensatory damages of $3,564 for medical bills, $72 for one day loss of wages[3], and damages for

---

[3] Although Sanders testified to missing work for months and eventually losing her job, no evidence of further loss or reduction of wages has been presented, leaving any damages for such as speculative.

mental anguish which manifested itself through physical harm; attorney's fees and costs; and punitive damages.  This sever episode of symptoms of Sanders' sarcoidosis was brought on by the stress she experienced upon realizing that her car had been repossessed.  However, sufficient evidence was presented that she had symptoms of sarcoidosis prior to the car repossession, and sarcoidosis itself is not caused by stress.  Therefore the court awards Sanders compensatory damages of $3,564 for medical bills, $72 for loss of wages, and $2,500 for the mental anguish that manifested itself in her physical symptoms. The court additionally awards Sanders attorney's fees and costs to be determined after her counsel has submitted an accounting of his time.  For the reasons previously stated, the court does not award any punitive damages.

Conclusion

For the foregoing reasons, a separate order will enter finding a willful violation of the automatic stay and requiring Community Cars to compensate Sanders $3,564 for medical bills, $72 for lost wages, $2,500 for mental anguish, and yet to be determined attorney's fees.  Community Cars is precluded from receiving damages for the deficiency owed after the sale of the car.

Sanders' attorney may file a statement of his reasonable fees no later than fourteen days from the date of this memorandum opinion.  Community Cars will have fourteen days thereafter to file an objection to the statement of fees, if it has any, and if it does so, the matter will be set for hearing.

Done this the 3rd day of January, 2014.

/s/ Dwight H. Williams, Jr.
United States Bankruptcy Judge

c: Nicholas H. Wooten, Attorney for Plaintiff
H.C. Trey Ireland, III, Attorney for Defendant
Robert Wayne Heath, Attorney for Defendant
Curtis C. Reding, Trustee